The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr., and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the prior Opinion and Award, except for some minor non-substantive modifications and the addition of Conclusion of Law (6) relating to medical compensation.
Prior to hearing on 28 February 1996, the parties entered into a Pre-Trial Agreement, which is hereby incorporated by reference as if fully set-out herein and where they agreed to a number of jurisdictional and other factual stipulations. The parties later agreed to stipulate and submit a package of medical reports attached to the 10 April 1996 correspondence of plaintiff's counsel.
* * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 50 year old high school graduate, who at the time of hearing was enrolled in computer school at CPCC (Central Piedmont Community College) attempting to obtain the vocational retraining recommended by her treating physician, Dr. Darden, because of the back problems giving rise hereto.
2. On 28 February 1994 she became employed as an apartment leasing agent by defendant-employer Paragon Group and since 21 February 1996 has worked in the same capacity for another employer earning a comparable average weekly wage to the $288.60 average weekly wage that she earned working for defendant-employer based on her $13,402.12 in gross earnings during her period of employment and 325 days worked.
3. Although plaintiff had undergone a myelogram after injuring her back fifteen years earlier; she did not require back surgery and subsequently recovered from the same injury without further back problems until 30 July 1994.
4. On the last mentioned date plaintiff re-injured her back when she stepped in a hole at home resulting in a herniated disc at the L-4, L-5 level of her lumbosacral spine manifested by incapacitating back and leg pain requiring her to undergo a lumbar discectomy at the affected level, which was performed on 16 August 1994 by Dr. J. Robin Hicks, a Charlotte orthopedic surgeon.
5. Plaintiff's condition initially improved following surgery, but on the morning of 27 August 1994 she had a severe sneezing episode resulting in a recurrent disc herniation at the same L-4, L-5 level manifested by a popping sensation in her lower back and a recurrence of her incapacitating back and leg pain. She subsequently returned to Dr. Hicks, who initially provided a conservative course of treatment for her incapacitating back and leg pain consisting of physical therapy and various medications. Despite her persisting pain plaintiff was able to return to work for defendant-employer on a four-hour a-day basis on 13 September 1994. Although Dr. Hicks recommended that she undergo repeat back surgery because of her recurrent disc herniation; on 28 September 1994 plaintiff sought a second opinion from Dr. B. W. Brawley, a Charlotte neurosurgeon, who recommended that she not do anything for three months because of the chance of recovery without further back surgery.
6. Plaintiff elected to follow Dr. Brawley's advice and on 10 October 1994 she was provided a note by Dr. Hicks releasing her to return to work as tolerated.
7. Although upon initially returning to work on part-time, four-hour a day basis, on 13 September 1994 she was experiencing persistent pain, plaintiff's symptoms subsequently subsided enabling her to continue regularly working until 28 November 1994 and was no longer experiencing the type of incapacitating back and leg pain from her recurrent L-4, L-5 disc herniation that would have required her to undergo corrective back surgery.
8. On 28 November 1994 while delivering some papers on the premises of defendant-employer to the offices of its District Manager at the South Park Apartments plaintiff slipped and nearly fell in the rain landing on her hand and leg sustaining a back strain under compensable circumstances, which (injury) materially aggravated her existing, but then non-incapacitating recurrent disc herniation resulting in her experiencing a recurrence of her incapacitating back and leg pain thereby proximately contributing to her disability as well as to her ultimate need of further surgery.
9. After initially being seen by Dr. Zipkin at Kaiser Permanente, who took her out of work and prescribed medication, plaintiff returned to Dr. Hicks on 6 December 1994 and he provided a continued course of conservative treatment.
10. Although with the same treatment plaintiff's condition subsequently improved enabling her to return to work at her request on 15 December 1994; not only was she still having pain, primarily in her left buttock and thigh, as well as numbness in the same leg resulting in Dr. Hicks limiting her to sitting longer than thirty minutes at a time without the ability to get up and move about and (Dr. Hicks) scheduling her to return to follow up in six weeks if she was still having trouble; but her pain progressively worsened after she returned to work.
11. Despite her worsened pain, however, plaintiff was able to continue regularly working for defendant-employer until 6 February 1995. On that date plaintiff sustained another injury under compensable circumstances when she slipped and fell down the stairs at another of defendant-employer's properties landing on her buttocks not only resulting in a cervical strain manifested by neck and shoulder pain, but a contusion, which aggravated her existing, but then non-incapacitating recurrent disc herniation thereby proximately contributing to her ultimate disability as well as her ultimate need of further back surgery.
12. On the same day plaintiff returned to Dr. Hicks, who not only prescribed a conservative course of treatment for the back and buttock pain that plaintiff sustained after falling and landing on her buttock on 6 February 1995 primarily consisting of medication as well as had her undergo another MRI showing a prominent recurrent disc herniation at the L-4, L-5 level of her lumbosacral spine, but subsequently referred her to physical therapy for her neck injury; however, despite both injuries plaintiff was able to continue regularly working for defendant-employer.
13. On 10 April 1995 while undergoing physical therapy at the Rehability Center for the cervical strain sustained on 6 February 1995 plaintiff aggravated her existing, but then non-incapacitating recurrent disc herniation when she was directed to walk backward on a treadmill resulting in her experiencing a recurrence of her incapacitating back and leg pain thereby proximately contributing to her ultimate disability when she was forced to stop working on 22 April 1995 and ultimately requiring her to undergo corrective surgery after her pain became intolerable and she developed progressive leg weakness.
14. After initially being seen on 13 April 1995 by Dr. Hicks, who injected her low back with a steroid in an attempt to relieve inflammation there and subsequently took her out of work, plaintiff was seen by one of his associates in his absence, Dr. Bruce Darden, and he has since assumed her care. Dr. Darden subsequently scheduled plaintiff for a diagnostic MRI, which showed a recurrent disc herniation at the L-4, L-5 level with significant compression and appeared to be slightly larger than the one shown on the last MRI done on 6 February 1995. When her progressive back and leg pain became intolerable and she developed progressive leg weakness after aggravating her existing, but then non-incapacitating recurrent disc herniation at Rehability on 10 April 1995 as a direct and natural result of the fall that she suffered at work on 6 February 1995 plaintiff underwent a repeat microdiscectomy at the involved L-4, L-5 level, which was performed on 25 May 1995.
15. Although the same surgery did result in some improvement in her pain and weakness; plaintiff continued to experience incapacitating pain following surgery. Initially Dr. Darden referred her to physical therapy, but when it did not resolve her pain he suggested pain management as well as vocational retraining, which she has done by enrolling in the computer school course at CPCC; however, plaintiff has elected not to pursue pain management and is understandably not interested in undergoing further surgery, which would involve another discectomy and fusion.
16. When she was seen by Dr. Darden on 27 November 1995 plaintiff remained totally incapacitated by her symptoms and incapable of earning wages in her regular job as a leasing agent or any other work for which she was qualified based on her age, education background and work experience and had not then reached maximum medical improvement for her most recent surgery. By the time she was last seen by Dr. Darden on 7 February 1996 plaintiff had not been rated for permanent partial disability nor is there any evidence that she had reached maximum medical improvement from and following the injury by accident giving rise hereto and most recent corrective surgery necessitated thereby such that an Award of permanent partial disability benefits could be entered.
In the interim, however, plaintiff had begun seeking employment herself and she subsequently obtained her current job as an apartment leasing agent on 21 February 1996, at which time her back injury was no longer totally incapacitating and she was capable of earning a comparable average weekly wage she did doing the same type of work for defendant-employer.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 28 November 1994 plaintiff sustained an injury by accident arising out of and in the course of her employment, which (injury) aggravated her existing, but then non-incapacitating recurrent disc herniation at the L-4, L-5 level of her lumbosacral spine, thereby proximately contributing to her disability as well as to the further corrective back surgery she ultimately underwent in May of the following year. G.S. § 97-2(6).
2. As a result of her 28 November 1994 back injury, plaintiff is entitled to temporary total disability compensation from 28 November 1994 to 15 December 1994 a rate of $192.41 per week. G.S. § 97-29.
3. On 6 February 1995 plaintiff sustained an injury by accident arising out of and in the course of her employment, which (injury) materially aggravated her existing, but then non-incapacitating, recurrent disc herniation at the L-4, L-5 level of her lumbosacral spine thereby proximately contributing to her disability as well as the further corrective surgery she was ultimately required to undergo. G.S. § 97-2(6).
4. As a direct and natural result of plaintiff's 6 February 1995 injury, which materially aggravated her existing, but then non-incapacitation recurrent disc herniation of the L-4, L-5 level of her lumbosacral spine, plaintiff was not only required to undergo further corrective back surgery, but was totally disabled from 22 April 1995 to 21 February 1996 entitling her to compensation at a rate of $192.41 per week during the same period. G.S. § 97-29.
5. Plaintiff has not yet been rated for permanent partial disability from the involved back injuries nor is there any evidence that she has reached maximum medical improvement from the same injuries and corrective surgery necessitated thereby such that a final Award can be entered compensating her for any resulting permanent partial disability. G.S. § 97-31(23).
6. As the result of her 28 November 1994, and 6 February 1995 injuries and resulting surgeries, plaintiff is entitled to have defendants pay for all reasonable medical expenses related thereto. G.S. § 97-25.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her temporary total disability, compensation at a rate of $192.41 per week during the periods from 28 November 1994 to 15 December 1994 and from 22 April 1995 to 21 February 1996. Such compensation having accrued the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto.
3. Defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injuries by accident giving rise hereto, including as part thereof the corrective back surgery she underwent in May of 1995, when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendants shall bear the costs, including as part thereof an expert witness fee in the amount of $300 to Dr. J. Robin Hicks, who appeared by way of deposition and gave expert medical testimony as well as the $400 expert witness fee previously awarded Dr. Darden for his deposition testimony to the extent the same has not already been paid.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________ LAURA KRANIFELD MAVRETIC COMMISSIONER